**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**CASE NO: 0:23-cv-62364-RS**

Jorge Arturo Sarabia Baez,
                    Petitioner,
v.

Lilia Marisol Castillo Roblero,

          Respondent.

_____/

## ANSWER AND AFFIRMATIVE DEFENSES WITH INCORPORATED MEMORANDUM OF LAW

COMES NOW the Respondent, Lilia Marisol Castillo Roblero, by and through the undersigned counsel, to file her ANSWER AND AFFIRMATIVE DEFENSES WITH INCORPORATED MEMORANDUM OF LAW and in support thereof states as follows:

1. Admitted in part, denied in part. Respondent admits that Father is a resident and citizen of Mexico. Respondent denies the remainder of the allegations in paragraph one (1).

2. Admitted in part, denied in part. Respondent admits that each party filed dueling proceedings in different Mexican courts. Respondent denies that such filing is an implicit acknowledgment that Mexico is the appropriate jurisdiction.

3. Admitted.

4. Denied.

5. Denied.

6. Denied.

7. Paragraph seven (7) does not call for a response, but to the extent that it does, the respondent denies it.

8.  Denied.

9.  Respondent admits for jurisdictional purposes only.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. This paragraph does not call for a response.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted in part, denied in part. Respondent admits everything in the paragraph except the last sentence, which she denies.

23. Admitted in part, denied in part. Respondent admits that the couple maintained a happy relationship until 2019. Respondent denies that the happy relationship extended through 2021.

24. Admitted in part, denied in part. Respondent admits that Father moved out of the family home in December 2022. However, Respondent denies the rest of this paragraph.

25. Denied. Respondent was not provided notice of the Mexican court's order. Respondent only found out about that order when she got served notice of the instant case in the Southern District.

26. Admitted.

27. Admitted.

28. Denied. Mother was never notified of the Sixth Court's Order.

29. Denied. Mother was never notified of the Sixth Court's Order.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted in part, denied in part. Respondent admits that the Father returned the Children and the Mother to the Mother's sister's home. However, Respondent denies the rest of the allegations in this paragraph.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Without knowledge, therefore denied.

41. Denied.

42. Denied.

43. Admitted.

44. Without knowledge, therefore, denied.

45. Admitted in part and denied in part. Respondent denies that the Children were wrongfully removed. Respondent admits the remainder of this paragraph.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Admitted for jurisdictional purposes only.

52. Admitted.

53. Admitted in part, denied in part. Respondent specifically denies that the majority of the Children's friends and family are in Mexico.

54. Admitted.

55. Admitted in part, denied in part. Respondent denies that the children were wrongfully removed. Respondent admits to the remainder of this paragraph.

56. This paragraph does not call for a legal response.

57. This paragraph does not call for a legal response.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. This paragraph does not call for a legal response.

63. Respondent re-alleges her responses contained in paragraphs 1-49 as if fully set forth herein.

64. Denied.

65. Denied.

66. Respondent re-alleges her responses contained in paragraphs 1-49 as if fully set forth herein.

67. This paragraph does not call for a legal response.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. This paragraph does not call for a legal response.

76. This paragraph does not call for a legal response.

77. Denied.

78. Denied.

79. Denied.

80. This paragraph does not call for a legal response.

81. Admitted.

82. Admitted.

83. Admitted.

84. Admitted in part, denied in part. Respondent denies that the Children are being wrongfully retained. Respondent admits that the Children are living at the address.

85. Denied.

86. Without knowledge, therefore, denied.

87. Admitted.

88. Admitted.

89. This paragraph does not call for a legal response.

90. Denied.

Respondent denies the requests contained in the WHEREFORE clause and prayer for relief.


## **AFFIRMATIVE DEFENSES**

**COMES NOW** the Respondent, by and through the undersigned counsel, to raise the following affirmative defenses, and in support thereof, states as follows:

1. Petitioner bears the burden of establishing, by a preponderance of the evidence, that his children were "wrongfully removed" or retained within the meaning of the Convention. *Ruiz v. Tenorio, 392* F.3d at 1247, 1250 (11th Cir. 2004).

2. Even if this Court determines that the Children were wrongfully removed from Mexico, the Petitioner must still demonstrate that he was exercising his custodial rights at the time of the removal or would have exercised those rights but for the removal. *See Ruiz,* 392 F.3d at 1251.

3. A Court is not bound to order the return of a child if the respondent demonstrates by a preponderance of the evidence that the person having care of the child was not exercising

rights of custody at the time of the removal or retention of the child. Hague Convention, art. 13(a); 22 U.S.C § 9003(e)(2)(B).

4. Although the Hague Convention does not define the "exercise" of rights of custody, federal courts have liberally "find exercise whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." *See Friedrich v. Friedrich,* 78 F.3d 1060, 1065 (6th Cir. 1996).

5. On or around January 11, 2023, Petitioner texted the Respondent, "They [referring to the Children] are all yours. Do whatever you want with them, and I hope their life fills you with good things." Respondent interpreted this to mean Petitioner's clear and unequivocal abandonment of the children.

6. Prior to this, Petitioner told Respondent's sister that he didn't love the Respondent anymore and that she could have the kids. Petitioner implored the Respondent's sister to convince Respondent to move with the Children to Florida.

**Grave Risk of Harm Exception**

7. Under Article 13b of the Hague Convention, a court is not bound to order the return of the child if there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation. 22 U.S.C. § 9003(e)(2)(A).

8. In addition, the party seeking to invoke the defense must establish that the risk to the child is "grave, not merely serious." *See Gomez v. Fuenmayor*, 812 F.3d 1005, 1012 (11th Cir. 2016).

9. The Sixth Circuit has stated that grave risks of harm typically fall within one of the two categories. (A) there is a grave risk of harm when the return of the child puts the child in

imminent danger prior to the resolution of the custody dispute (for example, returning the child to a war zone, famine, or disease. (B) There is a grave risk of harm in cases of serious abuse or neglect, or extraordinary emotional dependence … *Friedrich,* 78 F. 3d at 1069.

10. Although the evaluation of an alleged grave risk of harm should focus on the risk faced by the child, the Eleventh Circuit recognizes that "sufficiently serious threats and violence directed against a parent can nonetheless pose a grave risk of harm to a child as well." *Gomez,* 812 F.3d at 1010.

11. In this case, returning the Children to Mexico would expose them to a grave risk of harm because the Father is a child sex offender. Respondent's two nieces were living in the same home that Petitioner and Respondent lived in as their home. One niece was 17 years old, and the other was 19 years old at that time.

12. On or around November 2022, Respondent found text messages on Petitioner's phone where Petitioner was engaging in inappropriate sexual relations with her two nieces. *See Exhibit A attached.*[1] Respondent incorporates by reference the statements, pictures, and information contained in Exhibit A as if fully set forth herein. Exhibit A contains screenshots of the conversation between Petitioner and Respondent's 19-year-old niece. Respondent also found out that Petitioner was having the same inappropriate sexual relations with the 17-year-old niece but does not have screenshots or other photographic proof.

13. When Respondent confronted Petitioner, he told her that it was one of his side businesses and that she would never understand. He also told her that he was in too deep in this illegal

---

[1] Respondent has concurrently filed a Motion to Seal the exhibit.

business and did not know how to get out.[2] ***See Exhibit B*** for proof of Petitioner's illicit escort/trafficking business. Exhibit B depicts lewd photographs of the girls and women Petitioner traffics to his clientele in Mexico. Respondent incorporates by reference the photos, statements, and information contained in Exhibit B as if fully set forth herein.

14. The Petitioner has never been formally charged with these crimes because Respondent's nieces are too scared to report him to the Police. To make matters worse, Respondent's children are aware that their cousins were molested by their father, the Petitioner.

15. Although this Court does not make a determination of child custody when adjudicating a petition under the Hague Convention, Respondent requests that the Court take judicial notice of Fla. Stat. §61.13(2)(c)(3)(c)II which provides in pertinent part, "Whether or not there is a conviction of any offense of domestic violence or child abuse or the existence of an injunction for protection against domestic violence, the court shall consider evidence of domestic violence or child abuse as evidence of detriment to the child."

16. As a result, Respondent requests this court to consider evidence of Petitioner's sexual abuse against Respondent's nieces, especially since the minor children (Respondent and Petitioner's daughters) are aware of these crimes against their cousins.

17. If this Court orders the Children to be returned to Mexico, this is the environment they will be sent to. This puts the Children, who are both girls, at serious risk of exposure to human trafficking.

18. The grave risk of harm also applies here. Respondent applied for and was granted a restraining order in Mexico as a result of Petitioner's violence perpetrated against her.

---

[2] Upon information and belief, Petition operates an illegal escort business where he traffics women and minor girls to his clients for money.

19. During the period 2019 through 2022, Petitioner would physically hit the Respondent. On one occasion, the Petitioner pointed a gun at the Respondent while the youngest child was watching the entire incident.

20. Consequently, Petitioner's violence, although directed at the Respondent, poses a grave risk of harm to the Children. No child should be subjugated to watching a parent being threatened with a gun by the other parent.

21. As the Sixth Circuit has pointed out, a grave risk of harm can be established by showing that the children have extraordinary emotional dependence. Respondent points out to this court that the children, girls, are 10 and 8 years old. The minor girls are extraordinarily emotionally dependent on their mother, the Respondent. The Respondent has been the primary caregiver for the girls since birth. As a result, they have developed a strong emotional bond with the mother that will be severed if the girls are ordered back to Mexico.

22. For these reasons, ordering the Children back to Mexico puts the Children at grave risk of harm.

**<u>Mature Objection</u>**

1. Courts may refuse to order the return of the children if they find that the children object to being returned and have attained an age and degree of maturity at which it is appropriate to take account of their views. Hague Convention art. 13.

2. This exception must be proved by a preponderance of the evidence. 22 U.S.C. §9003(e)(2)(B).

3. Courts disagree as to whether an eight-year-old child is sufficiently mature. *See Fernandez ex rel. C.R.F.B. v. Bailey,* 2016 U.S. Dist. LEXIS 128732.

4. What is important to consider under this exception is the child's particularized reasons for wishing to remain in their new country rather than the child's preference for the parent with whom he or she wishes to live. *See Haimdas* v. *Haimdas,* 720 F. Supp 2d 183 (E.D.N.Y. 2010).

5. In this case, Respondent requests the Court to do an *in camera* examination of the children's objection to being returned to Mexico. The Court will find that the children have mature reasons for not wanting to be sent back to Mexico. The children see this not as a choice of parents but a choice of country.

### **Well-Settled Exception**

1. The Convention treats petitions filed in the first year differently from those filed more than one year after a child is removed: if the petition is filed within one year of the abduction, the signatory country where the child is located "shall order the return of the child forthwith;" but when a parent petitions for return more than a year after a child has been removed, the signatory country "shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment." Hague Convention art. 12.

2. After a year has passed, the abducting parent may prevent return by showing upon a preponderance of the evidence that the abducted child is "now settled" in their new country. See *id*.; see also 22 U.S.C. § 9003(e)(2)(B). This exception accounts for the reality that "at some point, a child may become so settled in a new environment that return is no longer in the child's best interests." *Hernandez v. Garcia Pena*, 820 F.3d 782, 787 (5th Cir. 2016); *See also Lozano*, 572 U.S. 1 (2014) ("[T]he expiration of the 1-year period opens the door to consideration of a third party's interests, i.e., the child's interest in settlement.").

3. Under the Well-Settled Exception, the Court remains free to consider whether the child's interest in remaining in the new country is outweighed by other interests of the child and the non-abducting parent, including the child's interest in returning to his or her original country of residence . . . the child's need for contact with the non-abducting parent . . . the non-abducting parent's interest in exercising the custody to which he or she is legally entitled; the need to discourage inequitable conduct . . . Id. at 1237.

4. To fall under this exception, the child must have "significant connections demonstrating a secure, stable, and permanent life in his or her new environment." *See Alcala v. Hernandez,* 826 F. 3d. 161, 170 (4th Cir. 2016) (affirming denial of return petition where the child was doing well in school, had a network of relatives and friends, and was financially stable in South Carolina).

5. The Court looks at several non-exhaustive factors in determining whether the children have been "well-settled." These include the age of the child; the stability of the child's residence in the new environment; whether the children attend school or daycare consistently; whether the child attends church or other religious institutions regularly; the stability of the [Respondent's] employment; and whether the child has friends and relatives in the new area. *Lozano v. Montoya Alvarez,* 697 F. 3d 41, 57 (2d Cir. 2012).

6. As of the date of filing of this Answer and Affirmative defenses, the Children have been residing in Florida for over fourteen (14) months.[3]

7. "As time passes a child becomes increasingly settled or connected to its new environment and delayed return may itself become the second harmful disruption." *In re Robinson,* 983 F. Supp. 1339, 1345 (D. Colo. 1997) (finding children settled where they were "old enough

---

[3] See page 2 of Petition to Return, paragraph 3.

to allow meaningful connections to the new environment to evolve" and had built such connections).

8. In this case, the Children have resided in South Florida for over fourteen months. The children are currently enrolled in school at "Imagine North Dale." Both children are consistently attending school and are doing well and participate in extracurricular activities. *See **Exhibit C** attached.[4]* Respondent incorporates by reference the photos, statements, and information contained in Exhibit C as if fully set forth herein.

9. The younger daughter has received several awards at this school, including an award for "Most Improved," a "Math Achievement" award, and an award for "Outstanding Efforts." *See **Exhibit C** attached.* Respondent incorporates by reference the photos, statements, and information contained in Exhibit C as if fully set forth herein.

10. The older daughter has also received several awards at this school, including an award for "Superb Behavior," an award for "Academic Achievement," and an award for "Greatest Growth." ***See Exhibit C** attached.* Respondent incorporates by reference the photos, statements, and information contained in Exhibit C as if fully set forth herein.

11. These awards indicate that the minor Children are functioning well in school and amongst their peers. ***See Exhibit C** attached.*

12. Since arriving in South Florida, the children have been regularly attending church, where they actively participate in the church's dance program.

13. The Children have also made strong and meaningful connections with new friends at the school.

---

[4] Respondent has concurrently filed a Motion to Seal the exhibit.

14. The Children have since established strong emotional bonds and ties with the Mother's extended family, as can be seen in **Exhibit C** attached.

15. The Children are also financially stable in South Florida. The Respondent/Mother is gainfully employed in a well-paying job at A & D Mortgage, LLC in Hollywood, Florida. *See **Exhibit D** attached.* Respondent incorporates by reference the statements, photos, and information contained in Exhibit D as if fully set forth herein.

16. Both the Respondent and Children now have their residency in the United States and are not subject to deportation.

17. The Children live with the Respondent and her significant other, who is also working and supporting the financial, social, and emotional needs of the Children.

18. The Children have access to private health insurance through Aetna-CVS. *See **Exhibit E** attached.* Respondent incorporates by reference the statements, photos, and information contained in Exhibit E as if fully set forth herein.

19. Therefore, Respondent requests this Court to find that the Children have become well-settled in South Florida, and it would not be in their best interest to be sent back to Mexico.

20. As the Fourth Circuit has observed, "If we were to hold that wrongful removal in itself should lead courts to exercise their retained jurisdiction in the face of an established Convention exception, we would render that exception a nullity: a necessary predicate to considering whether a child is 'settled' is a determination that the child was wrongfully removed; **if the latter were sufficient to warrant ordering return, the settled determination would be meaningless** [emphasis added]." *Lozano,* 134 S. Ct. at 1235.

**WHEREFORE**, for the reasons outlined above, Respondent respectfully requests this Court to enter an Order denying the Petition for Return.

Dated: February 22, 2024.

Respectfully submitted.

/s/ *Byron Acosta, Esq.*
Byron Acosta, Esquire (1039193)
byron@lawofficebyronacosta.com
Florida Bar. No. 1039193
BYRON ACOSTA, P.A.
Attorneys for Lilia Castillo Roblero
8461 Lake Worth Rd., Suite 238
Lake Worth, FL 33467
Phone: 561-805-3580
Fax: 561-805-3601

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

<u>/s/ <i>Byron Acosta, Esq.</i></u><br>
Byron Acosta<br>
Florida Bar No.: 1039193

**SERVICE LIST**

**Counsel for Petitioner**
Brett A. Barfield (Fla. Bar. No. 192252)
Brett@pag.law
PAG LAW PLLC
Four Seasons Tower
1441 Brickell Avenue, Suite 1120
Miami, Florida 33131
Telephone: 786-292-1599

**Counsel for Petitioner**
Andrew W. Balthazor (Fla. Bar. No. 1019544)
Andrew.Balthazor@hklaw.com
Brian A. Briz
Brian.Briz@hklaw.com
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: 305-374-8500

**EXHIBIT A: FILED UNDER SEAL**

**EXHIBIT B: FILED UNDER SEAL**

**EXHIBIT C: FILED UNDER SEAL**

**Form W-2** Wage and Tax Statement
Copy C — For EMPLOYEE'S RECORDS **2023**

This information is being furnished to the IRS. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

OMB No. 1545-0008
Department of Treasury
Internal Revenue Service

Control number: 0WE71 00KC 00191

Employer's name, address, and ZIP code
A&D MORTGAGE LLC
1040 S FEDERAL HWY
HOLLYWOOD FL 33020

Employee's name, address, and ZIP code
LILIA M CASTILLO
1870 NE 48 TH ST 249
POMPANO BEACH FL 33064

| | | | |
|---|---|---|---|
| 1 Wages, tips, other comp. 8481.70 | 2 Federal income tax withheld 583.51 |
| 3 Social security wages 8481.70 | 4 Social security tax withheld 525.87 |
| 5 Medicare wages and tips 8481.70 | 6 Medicare tax withheld 122.98 |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a |
| | 12b |
| 13 Statutory employee / Retirement plan / Third-party sick pay | 12c |
| | 12d |
| Employee's social security no. | 14 |
| Employer ID number (EIN) | |
| 15 St. Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

---

**2023 W-2 and Earnings Summary**

2023 W-2 and Earnings Summary
00KC 00012
Finance

| | Wages, Tips, Other Comp. Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages and Tips Box 5 of W-2 |
|---|---|---|---|
| Gross Pay | $8,540.23 | $8,540.23 | $8,540.23 |
| Less: Non-Taxable Earnings | $0.00 | $0.00 | $0.00 |
| Less: Retirement Deductions | N/A | N/A | N/A |
| Less: Other Pre-tax Deductions | ($58.53) | ($58.53) | ($58.53) |
| Less: Third Party Sick Pay | $0.00 | $0.00 | $0.00 |
| Less: Excess Wages | N/A | $0.00 | $0.00 |
| Total Reported Wages | $8,481.70 | $8,481.70 | $8,481.70 |

| | Fed Income Box 2 of W-2 | Social Security Box 4 of W-2 | Medicare Box 6 of W-2 |
|---|---|---|---|
| Tax Withheld | $583.51 | $525.87 | $122.98 |

**EXHIBIT D**

LILIA M CASTILLO
1870 NE 48 TH ST 249
POMPANO BEACH, FL 33064

The Form W-2 Box 1 wages are the Gross Wages as of your last pay statement for the year minus any non-taxable earnings or deductions, plus any additional compensation received after the last pay statement. Gross pay may not match Box 1 wages due to deductions for retirement deferrals, health insurance, or other Sec. 125 cafeteria plan deductions, etc.

---

**Form W-2** Wage and Tax Statement
Copy B — To Be Filed With
Employee's FEDERAL Tax Return. **2023**

This information is being furnished to the IRS.

OMB No. 1545-0008
Department of Treasury
Internal Revenue Service

Control number: 0WE71 00KC 00191

Employer's name, address, and ZIP code
A&D MORTGAGE LLC
1040 S FEDERAL HWY
HOLLYWOOD FL 33020

Employee's name, address, and ZIP code
LILIA M CASTILLO
1870 NE 48 TH ST 249
POMPANO BEACH FL 33064

| | | | |
|---|---|---|---|
| 1 Wages, tips, other comp. 8481.70 | 2 Federal income tax withheld 583.51 |
| 3 Social security wages 8481.70 | 4 Social security tax withheld 525.87 |
| 5 Medicare wages and tips 8481.70 | 6 Medicare tax withheld 122.98 |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a |
| | 12b |
| 13 Statutory employee / Retirement plan / Third-party sick pay | 12c |
| | 12d |
| Employee's social security no. | 14 |
| Employer ID number (EIN) | |
| 15 St. Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

---

**Form W-2** Wage and Tax Statement
Copy 2 — To Be Filed With
Employee's State, City, or Local
Income Tax Return. **2023**

OMB No. 1545-0008
Department of Treasury
Internal Revenue Service

Control number: 0WE71 00KC 00191

Employer's name, address, and ZIP code
A&D MORTGAGE LLC
1040 S FEDERAL HWY
HOLLYWOOD FL 33020

Employee's name, address, and ZIP code
LILIA M CASTILLO
1870 NE 48 TH ST 249
POMPANO BEACH FL 33064

| | | | |
|---|---|---|---|
| 1 Wages, tips, other comp. 8481.70 | 2 Federal income tax withheld 583.51 |
| 3 Social security wages 8481.70 | 4 Social security tax withheld 525.87 |
| 5 Medicare wages and tips 8481.70 | 6 Medicare tax withheld 122.98 |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a |
| | 12b |
| 13 Statutory employee / Retirement plan / Third-party sick pay | 12c |
| | 12d |
| Employee's social security no. | 14 |
| Employer ID number (EIN) | |
| 15 St. Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

---

**Form W-2** Wage and Tax Statement
Copy 2 — To Be Filed With
Employee's State, City, or Local
Income Tax Return. **2023**

OMB No. 1545-0008
Department of Treasury
Internal Revenue Service

Control number: 0WE71 00KC 00191

Employer's name, address, and ZIP code
A&D MORTGAGE LLC
1040 S FEDERAL HWY
HOLLYWOOD FL 33020

Employee's name, address, and ZIP code
LILIA M CASTILLO
1870 NE 48 TH ST 249
POMPANO BEACH FL 33064

| | | | |
|---|---|---|---|
| 1 Wages, tips, other comp. 8481.70 | 2 Federal income tax withheld 583.51 |
| 3 Social security wages 8481.70 | 4 Social security tax withheld 525.87 |
| 5 Medicare wages and tips 8481.70 | 6 Medicare tax withheld 122.98 |
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a |
| | 12b |
| 13 Statutory employee / Retirement plan / Third-party sick pay | 12c |
| | 12d |
| Employee's social security no. | 14 |
| Employer ID number (EIN) | |
| 15 St. Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

NTF 2585828   3 PYW2   Galaxy SA43

## EXHIBIT E

| Form **1095-A** | **Health Insurance Marketplace Statement** | | | VOID | OMB No. 1545-2232 |
|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ Do not attach to your tax return. Keep for your records. ▶ Go to *www.irs.gov/Form1095A* for instructions and the latest information. | | | CORRECTED | **2023** |

### Part I  Recipient Information

| 1 Marketplace identifier FL | 2 Marketplace-assigned policy number ▮▮▮▮ | 3 Policy issuer's name Aetna CVS Health | |
|---|---|---|---|
| 4 Recipient's name STEPHANIE RAMOS | 5 Recipient's SSN | | 6 Recipient's date of birth |
| 7 Recipient's spouse's name LILIA CASTILLO ROBLERO | 8 | | 9 Recipient's spouse's date of birth |
| 10 Policy start date 01/01/2023 | 11 Policy termination date 12/31/2023 | 12 Street address (including apartment no.) 1870 NE 48th St Apt 249 | |
| 13 City or town Pompano Beach | 14 State or province FL | 15 Country and ZIP or foreign postal code US 33064 | |

### Part II  Covered Individuals

| | A. Covered individual name | B. Covered individual SSN | C. Covered individual date of birth | D. Coverage start date | E. Coverage termination date |
|---|---|---|---|---|---|
| 16 | STEPHANIE RAMOS | ▮▮▮▮ | | 01/01/2023 | 12/31/2023 |
| 17 | LILIA CASTILLO ROBLERO | | | 09/01/2023 | 12/31/2023 |
| 18 | ▮▮▮▮ | ▮▮▮▮ | | 09/01/2023 | 12/31/2023 |
| 19 | ▮▮▮▮ | ▮▮▮▮ | | 09/01/2023 | 12/31/2023 |
| 20 | | | | | |

### Part III  Coverage Information

| Month | A. Monthly enrollment premiums | B. Monthly second lowest cost silver plan (SLCSP) premium | C. Monthly advance payment of premium tax credit |
|---|---|---|---|
| 21 January | 410.31 | 412.24 | 410.31 |
| 22 February | 410.31 | 412.24 | 410.31 |
| 23 March | 410.31 | 412.24 | 410.31 |
| 24 April | 410.31 | 417.75 | 410.31 |
| 25 May | 410.31 | 417.75 | 410.31 |
| 26 June | 410.31 | 417.75 | 410.31 |
| 27 July | 410.31 | 417.75 | 410.31 |
| 28 August | 410.31 | 417.75 | 410.31 |
| 29 September | 1,331.29 | 1,365.99 | 1,331.29 |
| 30 October | 1,331.29 | 1,365.99 | 1,331.29 |
| 31 November | 1,331.29 | 1,365.99 | 1,331.29 |
| 32 December | 1,331.29 | 1,365.99 | 1,331.29 |
| 33 Annual Totals | 8,607.64 | 8,789.43 | 8,607.64 |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.     Cat. No. 60703Q     Form **1095-A** (2023)

